# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Angela L. Burnett, | Civ. No. 10-708 (PAM/JJK) |
| Plaintiff, | |
| v. | |
| DJO, LLC, DJO Incorporated, and I-Flow Corporation, | |
| Defendants. | |
| | **MEMORANDUM OPINION AND ORDER** |
| Brenda G. Pennington, | Civ. No. 10-3018 (PAM/SRN) |
| Plaintiff, | |
| v. | |
| DJO, LLC, DJO Incorporated, and I-Flow Corporation, | |
| Defendants. | |

This matter is before the Court on Motions to Dismiss and/or Transfer Venue filed by Defendants DJO, LLC[1] and DJO Incorporated. Plaintiffs do not oppose the Motions to

---

[1] Because one of the Defendants is a limited liability corporation ("LLC"), the Court asked Defendants to file a letter regarding the citizenship of each of the members of the LLC. The Court's jurisdiction is premised on diversity of citizenship, and the citizenship of an LLC is the citizenship of each of its members. GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc., 357 F.3d 827, 829 (8th Cir. 2004). Based on Defendants' post-hearing submission, the Court is satisfied that complete diversity exists for the purposes of federal

(continued...)

Transfer. For the reasons that follow and as stated at the hearing, the Court denies the Motions to Dismiss. Pursuant to the parties' agreement, the Court will also order the transfer of these actions pursuant to 28 U.S.C. § 1404(a).

## BACKGROUND

Plaintiff Angela Burnett is a citizen and resident of Arizona. Plaintiff Brenda Pennington is a citizen and resident of Tennessee. Defendants DJO, LLC, DJO Incorporated (collectively "DJO"), and I-Flow Corporation are Delaware corporations with their principle places of business in California. Both Plaintiffs had arthroscopic shoulder surgery or surgeries (Burnett in Arizona, Pennington in Tennessee) after which a pain pump manufactured by I-Flow was implanted in the shoulder, delivering anesthetic to the "joint space" in the shoulder.

Both Plaintiffs ultimately experienced a complete degradation of the cartilage in their operated-on shoulder, a condition known as chondrolysis. Both contend that the pain pump, and in particular the injection of pain medication directly into the shoulder cartilage, caused the chondrolysis. They also allege that both DJO and I-Flow knew or should have known that the pump could cause such a condition, and that Defendants nonetheless encouraged physicians to use the pump in ways that were likely to cause chondrolysis. They seek to hold I-Flow liable for negligence and strict products liability, and contend that DJO is liable on a theory of civil conspiracy.

---

[1](...continued)
jurisdiction.

## DISCUSSION

### A.   Motions to Dismiss

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all facts alleged in the complaint as true. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the factual allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff and will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citations omitted). The complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The allegations in these two cases are that DJO conspired with I-Flow to distribute pain pumps and to convince physicians to use the pumps for orthopedic procedures they knew or should have known would cause chondrolysis. DJO's Motions to Dismiss claim that there was no such conspiracy. But that is not relevant at this stage. The Court must take the allegations as true and determine whether those allegations state a plausible claim for relief. This is so even if the allegations are inherently incredible. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1951 (2009) ("It is the conclusory nature of [plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").

DJO is correct that, under both Minnesota and Arizona law, a non-manufacturing and non-distributing defendant cannot be liable in strict products liability. Nor is there a dispute that DJO did not manufacture or distribute the pain pumps used in Plaintiffs' surgeries. (See,

3

e.g., Burnett Compl. ¶ 6 ("DJO LLC did not directly distribute the On-Q pain pump in this case . . . .").) The success of Plaintiffs' first two causes of action against DJO, for strict products liability and negligence, therefore depends on Plaintiffs' ability to prove the existence of the alleged conspiracy. DJO contends that, without an allegation that DJO also committed an underlying tort, the conspiracy claims fail. But this is not the law—the law requires that one conspirator commit an unlawful overt act in furtherance of the conspiracy that injures the plaintiff, not that each conspirator commit such an act. See, e.g., In re TMJ Implants Prods. Liab. Litig., 113 F.3d 1484, 1498 (8th Cir. 1997) (describing elements of civil conspiracy claim). Certainly if the underlying tort claims are dismissed, the civil conspiracy claims also fail. But DJO has failed to show that the underlying tort claims should be dismissed, and thus the conspiracy claim survives as well.

## C. Motions to Transfer

Defendants have moved to transfer these actions under 28 U.S.C. § 1404(a). Plaintiffs initially opposed the transfer, but shortly before the hearing withdrew their opposition to the motions to transfer, asking that the Court note that Plaintiffs are likely entitled to retain the benefit of Minnesota's statute of limitations after transfer. See Ferens v. John Deere Co., 494 U.S. 516, 523 (1990) (§ 1404(a) transfer does not change law applicable in a diversity case).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Because Minnesota has absolutely no connection with the facts of either of these cases, the Court agrees that transfer is

4

appropriate. Whether the Minnesota statute of limitations should apply to either action is a matter to be determined by the transferee court.

**CONCLUSION**

DJO has failed to establish that any of Plaintiffs' claims should be dismissed. Accordingly, **IT IS HEREBY ORDERED that**:

1. The Motions to Dismiss or Transfer Venue (Docket No. 18 in 10-cv-708; Docket No. 7 in 10-cv-3018) are **DENIED in part** and **GRANTED in part**;

2. Pursuant to 28 U.S.C. § 1404(a), Burnett v. DJO, 10-cv-708, is hereby **TRANSFERRED** to the United States District Court for the District of Arizona; and

3. Pursuant to 28 U.S.C. § 1404(a), Pennington v. DJO, 10-cv-3018, is hereby **TRANSFERRED** to the United States District Court for the Western District of Tennessee.

Dated: Tuesday, October 12, 2010      *s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sherry Welch,                                            Civ. No. 04-3973 (PAM)

              Plaintiff,

v.                                                         **ORDER**

Wyeth LLC, et al.,

              Defendants.

---

On January 21, 2011, this Court ordered the parties to file memoranda addressing whether this matter should be transferred to another, more convenient, judicial district under 28 U.S.C. § 1404(a). After reviewing the parties' submissions, the Court has determined that transfer is appropriate.

Section 1404 provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When considering whether to transfer an action under section 1404(a), the Court must engage in a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). As required by the statute, the Court first considers "the convenience of the parties and witnesses [and] the interest[s] of justice." 28 U.S.C. § 1404(a); see also Terra Int'l, 119 F.3d at 691. These factors are not exhaustive, and the Court must "weigh in the balance a number of case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

Plaintiff does not oppose the transfer of this action to her home district, the Middle District of North Carolina. She notes that all of her treating physicians are located in North Carolina and are beyond the subpoena power of a Minnesota court. Given courts' preference for live testimony, she contends that a transfer will promote the interests of justice by allowing her to present live testimony to fully explain her claims to a jury.

Defendants, conversely, oppose the transfer. They contend that, having chosen Minnesota as the forum for her lawsuit, Plaintiff should be forced to live with that decision. Indeed, Defendants accuse Plaintiff of trying to "game the system" and "treat[ing] Minnesota like a drive-thru" by filing a lawsuit in Minnesota with no intention of prosecuting that lawsuit here. (Defs.' Mem. (Docket No. 14) at 3.) The Court reminds Defendants that it was the Court, not Plaintiff, who requested briefing on the propriety of transfer. There is no indication in the record that Plaintiff would have sought such transfer absent the Court's encouragement. Defendants' attacks on Plaintiff's motives are not well taken.

Defendants' attempts to ascribe nefarious intent to the filing of this, and other, lawsuits here is similarly unavailing. Defendants' own authority recognizes that it is proper for a plaintiff in our federal system to file a lawsuit in a district in which the procedural protections are favorable, presuming all requirements of venue and personal jurisdiction are met. And although Defendants quote liberally from oral argument transcripts and the parties' briefs in the seminal Minnesota Supreme Court case that allowed out-of-state plaintiffs to take advantage of Minnesota's generous statute of limitations, transcripts and briefs are not the decision of the court. (Defs.' Mem. at 4-5 (quoting briefs and hearing transcript from

2

Fleeger v. Wyeth, 771 N.W.2d 524 (Minn. 2009)).) That decision unambiguously allowed precisely what occurred here, and the Court will not penalize Plaintiff for taking advantage of favorable law.

Defendants also argue that courts in other states should not have to apply Minnesota's generous statute of limitations. According to Defendants, those states have determined that a generous statute of limitations is not warranted, and asking North Carolina to apply a different statute of limitations "will be subverting North Carolina's policy." (Def.'s Mem. at 6.) Defendants maintain that the Court should not impose a burden on North Carolina courts and citizens to try cases that require the application of a statute of limitations different than that applied in North Carolina.

But this is what federal courts do. Federal courts apply different laws, often laws that are distinctly different or in conflict with the law of the federal court's home state. It is not a burden on North Carolina courts to ask them to try cases involving North Carolina residents, no matter whose law applies. Defendants do not explain how keeping these cases in a District with no connection to the facts underlying the lawsuit, and conscripting that District's citizens into jury service, is a less "heavy" burden than the burden a transfer would impose on North Carolina. (Defs.' Mem. at 7.) Defendants' argument that the interests of justice weigh against transfer are without merit.

The interests of justice clearly require the transfer of this action to the Middle District of North Carolina. Plaintiff is a citizen and resident of North Carolina. All of the events giving rise to the lawsuit occurred in North Carolina. All of Plaintiff's witnesses are in North

Carolina. Minnesota simply has no connection with the facts of this case, nor does Minnesota have an interest in providing a forum for Plaintiff's claims. As other judges of this District have recognized, "Minnesota does not appear to be convenient for <u>anyone</u>.... <u>Any</u> state with <u>any</u> connection to this lawsuit would be more convenient than Minnesota." Powell v. I-Flow Corp., 711 F. Supp. 2d 1012, 1015 (D. Minn. 2010) (Schiltz, J.) (emphases in original); see also Order, Cabot v. Wyeth LLC, No. 10-cv-729 (Oct. 20, 2010) (Ericksen, J.) (same).

Defendants' arguments amount to a request that the Court penalize Plaintiff for attempting to take advantage of favorable law. The law does not support that view of the forum non conveniens doctrine, however. Indeed, as the Supreme Court has pointed out, "[t]he desire to take a punitive view of the plaintiff's actions should not obscure the systemic costs of litigating in an inconvenient place." Ferens v. John Deere Co., 494 U.S. 516, 529 (1990). None of Defendants' arguments establish that Minnesota is a more convenient forum. As such, the systemic costs of litigating this case in Minnesota weigh strongly in favor of transferring this action to a more convenient forum, namely the Middle District of North Carolina.

Having considered the relevant section 1404(a) factors, the Court finds that those factors require the transfer of this action to the Middle District of North Carolina.

Accordingly, **IT IS HEREBY ORDERED** that pursuant to 28 U.S.C. § 1404(a), this case is hereby **TRANSFERRED** to the United States District Court for the Middle District of North Carolina.

Dated: Tuesday, March 1, 2011        *s/ Paul A. Magnuson*
                                      Paul A. Magnuson
                                      United States District Court Judge

5